UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SHERRY G. BRIGMAN, ) | |
| ) | |
| and ) | |
| ) | |
| EARL BRIGMAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:10-CV-498 (HEH) |
| ) | |
| THE MEGA LIFE & HEALTH ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| and ) | |
| ) | |
| RICHARD A. WILLIG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This Memorandum is respectfully submitted on behalf of The MEGA Life & Health Insurance Company ("MEGA") and Richard A. Willig[1] ("Willig") (collectively "Defendants"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint should be dismissed in its entirety because it fails to state a claim upon which relief can be granted.

### BACKGROUND

**I.     PLAINTIFFS' COMPLAINT**

Plaintiffs allege that in 2005, Willig, an insurance representative for MEGA, contacted

---

[1] As discussed in Defendants' Notice of Removal, Willig was fraudulently joined to the Complaint because the claims asserted against Willig have no possibility of surviving in state court, and thus, he should be dismissed as a party, and this Court should retain jurisdiction pursuant to 28 U.S.C. § 1332. As Willig has been fraudulently joined, complete diversity exists between the Brigmans, residents of Virginia, and MEGA, an Oklahoma corporation with its principal place of business in Texas.

Sherry and Earl Brigman (the "Brigmans") for the purpose of selling them medical benefits insurance offered by MEGA for small business owners. (Compl. ¶ 5.) The Brigmans purchased medical benefits insurance from MEGA, which they identify in the Complaint as policy number 9054470517. (*Id.*; *see* Certificate at 9 (attached as Exhibit A).)[2] The Brigmans also joined the National Association of Self-Employed ("NASE") and the Alliance for Affordable Services ("AAS"), so that they could join "a large group of insurance consumers" who together could "obtain group-like quality health insurance similar to a major medical policy at group-like premiums" such as the plan offered by MEGA. (Compl. ¶ 6.)

The Brigmans allege that Willig induced them to purchase the Certificate and join the two organizations by misrepresenting that coverage provided by the Certificate was similar to a major medical policy, "when in fact the policy had schedules that severely limited coverage." (Compl. ¶ 7.) Specifically, the Brigmans contend that Willig represented that the Certificate covered "80% of any medical expenses that [Plaintiffs] incurred after [Plaintiffs] met an annual $3,000.00 deductible." (Compl. ¶8.) In addition, the Brigmans assert that Willig used "written pamphlets and materials" during his sales call which they claim falsely represented that the benefits offered by MEGA were similar to those offered by a major medical policy. (Compl. ¶ 9.) The Brigmans further contend (without specifying a date or dates) that MEGA and Willig "refused to provide Brigman with a written explanation of the terms and conditions of the MEGA policy regarding the benefits provide[d] or excluded services," and that they received repeated assurances that their needs would be met by the benefits they had purchased. (Compl. ¶¶ 10-11.)

---

[2] This Court may consider the Certificate without converting the instant motion to one for summary judgment because the Brigmans repeatedly refer to the "policy" in their Complaint (*see* Compl. ¶¶ 5, 7, 8, and 11), and, accordingly, the Certificate is "integral to and explicitly relied on in the complaint." *Tessler v. NBC*, 2010 U.S. App. LEXIS 2397, * 2-3 (4th Cir. Feb. 4, 2010) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

In 2008 and 2009, the Brigmans allegedly incurred significant medical expenses. (Compl. ¶ 13.) They claim that MEGA "refused to pay for 80% of the medical expenses incurred." (Compl. ¶ 14.) As a result, the Brigmans claim that MEGA has breached the Certificate, and that MEGA, along with Willig, committed fraud and are liable for statutory false advertising.

## II.   PROCEDURAL HISTORY

The Brigmans filed a Complaint in the Circuit Court for the City of Richmond, Virginia, on June 14, 2010, alleging the following claims: (1) breach of contract (against MEGA only); (2) fraud (against MEGA and Willig); and (3) false advertising under Virginia Code §§ 18.2-216 and 59.1-68.3 (against MEGA and Willig). The Brigmans seek compensatory damages of $80,000, and punitive damages of $350,000.

On July 21, MEGA and Willig properly removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1332. MEGA and Willig now move this Court to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's initial pleading and does not resolve contests surrounding the facts or the merits of a claim. *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering a motion to dismiss, the court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to the plaintiff. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). That said, however, to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief' as required by Rule 8(a)(2).").

## ARGUMENT

### I. PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT I) SHOULD BE DISMISSED BECAUSE THE CERTIFICATE CLEARLY DISCLOSED THE BENEFITS PURCHASED BY THE BRIGMANS.

Count I fails to state an actionable claim because the only allegations of breach and damages relate to a breach of the insurance policy issued by MEGA to the Brigmans, and the provision that MEGA allegedly breached ("by failing to pay 80% of the medical bills incurred by Brigman") does not exist in the Certificate. As a result, the Brigmans have failed to state a claim for breach of contract against MEGA.

In Virginia, the elements of a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 449 (E.D. Va. 2009) (citing *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (Va. 2004)). Though the Brigmans allege that MEGA breached the Certificate by failing to provide certain benefits, this allegation is undermined by the very terms of the Certificate which on its face does not provide the medical benefits the Brigmans allege they purchased.

Indeed, the Certificate plainly states the express terms of the Brigmans' medical benefits coverage. For example, the deductible is listed as $2,000 and the co-insurance provided that the miscellaneous hospital inpatient charge would be 80% "up to $20,000." (Certificate at 9.) It also lists Hospital Room and Board and Intensive Care as having a co-insurance of 100%, with a maximum of $400 and $1,200 per day, respectively. (Certificate at 9.) Similarly, benefits for surgeon expenses covers 80% of charges, up to a maximum of $5,000 for hospital stays, (or up to a maximum of $3,000 for outpatient surgery facility stays), and the benefit for outpatient surgery expenses cover 80% up to a maximum of $12,000. (Certificate at 9.) While the term 80% is used frequently in the Certificate Schedule of Benefits, nowhere does it state that MEGA is obligated to pay 80% of <u>all</u> charges for all services, after the payment of the monthly premium.

The Complaint suggests that two of the medical procedures for which the Brigmans claim they incurred costs were "a hip replacement surgery" and "an appendectomy surgery." (Compl. ¶ 13.). The Complaint further states that "Mega refused to pay for 80% of the medical expenses incurred by Brigman [and] . . . Brigman has incurred unpaid medical expenses in excess of $80,000.00" (Compl. ¶ 14). Because of the maximum benefit limitations set forth in the Schedule of Benefits of the Certificate upon which the Brigmans rely, simply having "unpaid medical expenses in excess of $80,000.00" does not sufficiently allege breach of contract. Thus, the Brigmans' assertion that MEGA somehow breached a contract by failing to pay for 80% of their medical expenses is plainly belied by the terms of the Certificate.

The Brigmans' two-sentence breach of contract claim provides no details of the alleged breach because no breach has occurred. For this reason, the Brigmans' Count I should be dismissed with prejudice.

## II. PLAINTIFFS' FRAUD CLAIM (COUNT II) SHOULD BE DISMISSED BECAUSE THEY HAVE NOT PLED REASONABLE RELIANCE.

Likewise, the Brigmans have no actionable fraud claim. The Brigmans assert that Willig and MEGA misrepresented the terms of the Certificate and their relationships with NASE and AAS in order to induce the Brigmans into purchasing the Certificate to their detriment. The Brigmans' claim should be dismissed because they cannot establish that they reasonably relied on the alleged misrepresentations and omissions of MEGA or Willig, and because the relationship between MEGA on the one hand, and NASE and AAS on the other, simply is not material.

In Virginia, the elements of a cause of action for fraud are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)). With regard to reasonable reliance, "[i]n Virginia, an individual 'may not reasonably rely upon an oral statement when he has in his possession a contrary statement in writing.'" *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App'x 504, 506-07 (4th Cir. 2010) (citing *Foremost Guaranty Corp. v. Meritor Savings Bank*, 910 F.2d 118, 126 (4th Cir. 1990)). In other words, "Plaintiffs cannot be heard to complain when they failed to read the relevant documents." *Johnson v. Washington*, 559 F.3d 238, 245 (4th Cir. 2009).

The Brigmans allege that Willig and MEGA "misrepresented to Brigman that the policy was similar to a major medical policy, when in fact the policy had schedules that severely limited coverage." (Compl. ¶ 7.) They also assert that Willig and MEGA misled them to believe that the insurance they were obtaining would protect them from major medical expenses, but the Certificate offered only limited protection, (*id.*), and that "Willig repeatedly assured Brigman that the Mega Policy would cover 80% of any reasonable and medically necessary medical expenses" after paying

the deductible. (Compl. ¶ 11.) However, any reliance on the alleged misrepresentations would have been unreasonable, and therefore, the claim for fraud should fail. While the Brigmans claim that they requested (and did not receive) a written explanation of the terms and conditions of the Certificate regarding the benefits and services, (Compl. ¶ 10), they do not allege that they never received a copy of the Certificate; nor do they claim they failed to receive any medical benefits insurance in November 2005. (Compl. ¶¶ 5-9.) As of November 2005, the Brigmans had the written Certificate outlining the scope of the medical benefits coverages that they elected to purchase. Moreover, the Certificate also expressly gave the Brigmans a ten-day period to examine the coverages to determine if the Certificate met their medical needs, and if not, they could elect to rescind the Certificate as a whole. (Certificate at 7.) Accordingly, any reliance on an alleged oral misrepresentation regarding the terms of the coverage was entirely unreasonable, and as such, the Brigmans' claim for fraud should fail.

Additionally, the Brigmans take issue with the alleged lack of disclosure regarding MEGA's alleged relationship with NASE and AAS, organizations the Brigmans claim they joined before purchasing medical benefits coverage. (Compl. ¶ 4.) A misrepresentation is "material when it influences a person to enter into a contract, when it deceives him to act, or when without it the transaction would not have occurred." *Persaud Cos. v. IBCS Group, Inc.*, 2010 U.S. Dist. LEXIS 34183 (E.D. Va. Apr. 5, 2010) (citing *J.E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 343 S.E.2d 350, 355 (Va. 1986) (quoting *Packard Norfolk v. Miller*, 198 Va. 557, 95 S.E.2d 207, 211-12 (Va. 1956))). Here, the relationship between or among MEGA and NASE/AAS is not material as a matter of law. While the Brigmans allege that that they joined NASE and AAS so they could purchase the Certificate, nowhere in the Complaint do they allege that their NASE and AAS membership was the reason they purchased the Certificate. Nor do they allege that they would not

7

have purchased the Certificate had they been aware of the relationship. Therefore, because the relationship between MEGA and the NASE and AAS is not material as a matter of law and is not alleged to be material, Count II should be dismissed with prejudice.

### III.    PLAINTIFFS' STATUTORY FALSE ADVERTISING CLAIM (COUNT III) IS BARRED BY THE STATUTE OF LIMITATIONS.

Plaintiffs' statutory false advertising claim, premised on violations of Virginia Code §§ 18.2-216 and 59.1-68.3, is barred by a two-year statute of limitations.[3] Va. Code Ann. § 8.01-248; *Parker-Smith v. Sto Corp.* 262 Va. 432, 551 S.E.2d 615 (2001). A cause of action for statutory false advertising accrues "at the time of publication of the prohibited material with the purpose of inducing the public to enter into an obligation." *Glass v. Trafalgar House Property, Inc.*, 58 Va. Cir. 437, 443 (Loudoun County 2002). Generally, these statutory actions coincide when a purchase is made based on misleading advertising. *Id.*; *see Fix v. Eakin/Youngtob Assocs., Inc.*, 61 Va. Cir. 604, 606 (Alexandria City 2002) (finding that the plaintiffs entered into the contract for their home in 1997 and "the cause of action would clearly accrue when the contract was signed. Any reliance on deceptive advertising, therefore, had to occur before that date").

The Brigmans' false advertising claim is based on allegations that they were misled by written materials concerning the relationships between and among MEGA and the associations, which materials they claim induced them to purchase association memberships and medical benefits coverage. (Compl. ¶¶ 24-25.) The Brigmans readily admit that they were presented with the allegedly false "written pamphlets and materials during Willig's sales call" in November 2005, and that these advertisements and other misrepresentations induced them to purchase medical benefits coverage in November 2005. (Compl. ¶ 9.) Thus, the Brigmans' false advertising claims accrued

---

[3]     Virginia Code § 18.2-216 defines the scope of a claim for false advertising, and § 59.1-68.3 provides for the private right of action for any person injured by such advertising.

no later than November 2005. Thus, and with the filing of a Complaint some four and a half years after the alleged publication was made known to the Brigmans, there can be no actionable statutory false advertising claim because such claims, if true, accrued no later than November of 2005. Accordingly, this claim is time-barred and, as such, Count III should be dismissed with prejudice.

## CONCLUSION

Therefore, for the reasons stated above, The Mega Life & Health Insurance Company and Richard A. Willig respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Dated: July 28, 2010

Respectfully submitted,

THE MEGA LIFE & HEALTH
INSURANCE COMPANY AND
RICHARD A. WILLIG


/s/_____
Brian E. Pumphrey (VSB # 47312)
Ryan D. Frei (VSB # 70996)
MCGUIREWOODS LLP
901 East Cary Street
One James Center
Richmond, Virginia 23219-4030
804.775.1000 (v)
804.775.1061 (f)
bpumphrey@mcguirewoods.com
rfrei@mcguirewoods.com

*Counsel for The Mega Life & Health Insurance Company and Richard A. Willig*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2010, a true copy of the foregoing was filed using the Court's CM/ECF system, which will send electronic notice of such filing to:

> W. Barry Montgomery, Esq.
> KALBAUGH, PFUND & MESSERSMITH
> 901 Moorefield Park Drive, Suite 200
> Richmond, Virginia 23236

/s/_____
Brian E. Pumphrey (VSB # 47312)
Ryan D. Frei (VSB # 70996)
MCGUIREWOODS LLP
901 East Cary Street
One James Center
Richmond, Virginia 23219-4030
804.775.1000 (v)
804.775.1061 (f)
bpumphrey@mcguirewoods.com
rfrei@mcguirewoods.com

*Counsel for The Mega Life & Health Insurance Company and Richard A. Willig*